844 P.2d 1230 (1992)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of O.J.S., A.S.S., and D.A.S., Jr., Children and Concerning D.A.S., Sr., and D.A.S., Respondents-Appellants.
Nos. 91CA0343, 91CA0344, 91CA0347 and 91CA0348.
Colorado Court of Appeals, Div. III.
July 2, 1992.
Rehearing Denied August 27, 1992.
Certiorari Granted February 1, 1993.
*1231 Patricia L. Wells, City Atty., Leah L. Audin, Asst. City Atty., Denver, for petitioner-appellee.
Law Offices of Allen B. Alderman, Allen B. Alderman, Denver, Guardian Ad Litem.
Donald R. Carwin, Denver, for respondent-appellant D.A.S., Sr.
Cynthia Mardian, Denver, for respondent-appellant D.A.S.
Opinion by Judge METZGER.
In these consolidated appeals, D.A.S., mother, and D.A.S., Sr., father, appeal a judgment of the juvenile court which terminated their parent-child legal relationships with their children, O.J.S., A.S.S., and D.A.S., Jr. We affirm.

I.
The mother contends that the court erred in allowing the testimony of a psychologist and in admitting his report into evidence at the termination hearing. She argues that the testimony and report were protected from disclosure by the attorney-client privilege. We disagree.
The purpose of the attorney-client privilege is to secure the orderly administration of justice by insuring candid and open discussion by the client to the attorney without fear of disclosure. See Losavio v. District Court, 188 Colo. 127, 533 P.2d 32 (1975); § 13-90-107(1)(b), C.R.S. (1987 Repl.Vol. 6B). However, the attorney-client privilege exists to protect confidential communications, and it is waived by any voluntary disclosure by the privilege holder to a third person. Denver Post Corp. v. University of Colorado, 739 P.2d 874 (Colo.App.1987).
Here, on December 4, 1990, the mother's counsel filed a motion for appointment of an expert witness pursuant to § 19-3-607, *1232 C.R.S. (1991 Cum.Supp.). She requested the court to appoint the psychologist "to conduct an evaluation of the Respondent and her relationship with the minor children...." The court granted the motion.
The psychologist conducted his evaluation of the mother and her relationship with her children in late summer of 1990. He met with the mother individually five times for clinical interviews and testing. On one occasion, he met with the mother and the children for an interactional evaluation. In addition to conducting the evaluation sessions, he obtained relevant documentation from pertinent agencies and individuals involved with the mother and conducted telephone conversations with the mother's caseworker, the mother's counsel, and the assistant city attorney assigned to the mother's case. From this information, the psychologist prepared a report.
At trial, the guardian ad litem sought to call the psychologist as a witness and to enter his report as an exhibit. Relying on B.B. v. People, 785 P.2d 132 (Colo.1990), the mother's counsel objected, arguing that the attorney-client privilege protected the testimony and report from disclosure.
The trial court admitted both the testimony and the report. It held that the privilege discussed in B.B. v. People, supra, was limited to those instances in which the only person being evaluated is a parent. If, as here, the children were present for at least part of the evaluation, and the children were parties and were represented by counsel, the trial court held that the privilege recognized in B.B. v. People, supra, was not applicable. The court's logic was that the children's involvement in the evaluation either negated any attorney-client privilege that might have existed or created an equal privilege in the children which only the children could waive.
After reviewing the record, we conclude that the psychologist was appointed and hired under circumstances which prevented the creation of any attorney-client privilege. As noted above, the mother's motion for appointment of an expert stated that the purpose of the appointment was "to conduct an evaluation of the Respondent [mother] and her relationship with the minor children...." The psychologist testified that, when he was hired, the mother's counsel was aware that "in every situation like this one," the psychologist conducted a psychological evaluation of the parent and also conducted interactional evaluations of the parent with the child. Therefore, the mother had notice from the outset that her communications would not be confidential.
Moreover, § 19-3-203(2), C.R.S. (1991 Cum.Supp.) provides that the children, through the guardian ad litem, must be provided with all reports made by any agency or person pursuant to the Children's Code, including reports of examinations of the child or persons responsible for the neglect or dependency of the child.
Consequently, we conclude that, inasmuch as the mother knew that her communications would be disclosed to third persons, her children, and the guardian ad litem, the attorney-client privilege did not attach to the testimony of the psychologist or to his report.
In light of this conclusion, we reject the mother's argument that the presence of the children did not destroy the privilege because they were necessary parties to make the evaluation possible. See 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 503(a)(4)[01] at 503-42 (1991).

II.
The mother also contends that, during its bench comments at the conclusion of the termination hearing, the court erred in applying the six-month time requirement of § 19-3-702(3), C.R.S. (1991 Cum.Supp.) of the permanency planning statute in ascertaining a "reasonable" length of time for purposes of § 19-3-604(1)(c)(III), C.R.S. (1991 Cum.Supp.) of the termination statute. We decline to address this contention.
In most instances, an order or judgment must be final before any appeal may be taken to this court. C.A.R. 1(a); § 13-4-102(1), C.R.S. (1987 Repl.Vol. 6B).
A court's remarks or expressions of opinion made during or at the end of a *1233 proceeding are not necessarily formal findings of fact prepared as the basis of the judgment. Despite a court's characterizations of its oral remarks as "findings and conclusions," the court has the authority to supplement and modify the opinions it expressed in its oral remarks until the date judgment formally enters. See Koontz v. Rosener, 787 P.2d 192 (Colo.App.1989). Consequently, an order or judgment must be reduced to writing and dated and signed before it is a final, appealable order. C.R.C.P. 58; In re Marriage of Hoffner, 778 P.2d 702 (Colo.App.1989).
We therefore conclude that the court's written findings and conclusions signed and dated January 22, 1991, and not the trial court's bench comments at the end of the termination hearing, constitute the basis of the final judgment in this action. Since the trial court did not enter any findings concerning the application of the permanency planning statute in its final, written judgment, we cannot consider the issue in this appeal. See Koontz v. Rosener, supra.

III.
The father contends that the court erred in taking judicial notice of the record of the two dependency and neglect actions concerning his children which were consolidated for the termination hearing. We disagree.
A court may take judicial notice of its own file, its findings of fact, and its conclusions of law. Sakal v. Donnelly, 30 Colo.App. 384, 494 P.2d 1316 (1972).
The father argues that, in the context of a juvenile termination hearing, it is error for the court to take judicial notice of findings of fact made with regard to other phases of the proceedings. He bases this argument on the fact that these findings are premised on a different standard of proof, (preponderance of the evidence) than the findings which are required at a termination hearing (clear and convincing evidence). We reject this argument.
In People in Interest of A.M.D., 648 P.2d 625 (Colo.1982), our supreme court held that it was constitutionally permissible for a decree of dependency and neglect based on facts found by a preponderance of the evidence standard to serve as a predicate for termination of the parent-child relationship. We view that decision as dispositive of the father's contention.
The father also argues that it was error for the court to take judicial notice of the files because it denied him the right to cross-examine witnesses, to prepare an effective defense, and to obtain effective appellate review of interlocutory determinations prior to their use as part of the evidence at the termination hearing. He also argues that taking judicial notice of certain reports contravenes the requirements of § 19-1-107(2), C.R.S. (1991 Cum.Supp.).
We decline to address these arguments because they were not raised as specific, timely objections in the trial court and, therefore, were not preserved for review. See Hancock v. State, 758 P.2d 1372 (Colo.1988).

IV.
Finally, both parents contend that the evidence is insufficient to sustain the judgment. We disagree.
Our review of the record shows that the juvenile court's findings made pursuant to § 19-3-604(1)(c), C.R.S. (1991 Cum.Supp.) are supported by clear and convincing evidence. Thus, we may not disturb them on review. See People in Interest of M.M., 726 P.2d 1108 (Colo.1986). Further, since the findings conform to the statutory criteria for termination, we must presume that the trial court considered and eliminated less drastic alternatives to termination. See People in Interest of M.M., supra.
The judgment is affirmed.
REED and MARQUEZ, JJ., concur.