23CA2182 Curfman v Cantir 12-12-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2182
San Miguel County District Court No. 23CV6
Honorable Keri A. Yoder, Judge

Kenneth Curfman,

Plaintiff-Appellant,

v.

Mariana L. Cantir,

Defendant-Appellee.

JUDGMENT AFFIRMED
AND APPEAL DISMISSED IN PART

Division V
Opinion by JUDGE GROVE
Freyre and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 12, 2024

Kenneth Curfman, Pro Se

Mariana L. Cantir, Pro Se

¶ 1      Plaintiff, Kenneth Curfman, appeals the district court's grant of the motion for judgment on the pleadings filed by defendant, Mariana L. Cantir. The district court ruled that Curfman's claim for fraudulent misrepresentation against Cantir was precluded because the parties already resolved the dispute in a previous case in which Curfman sought a dissolution of marriage. We affirm the district court's judgment but dismiss Curfman's appeal to the extent that it challenges the district court's award of attorney fees.

## I.    Background

¶ 2      We draw the following factual background from the record, including the district court's order and Curfman's previous appeal to this court. *See In re Marriage of Curfman*, (Colo. App. No. 22CA1026, July 20, 2023) (not published pursuant to C.A.R. 35(e)) (*Curfman I*).

¶ 3      Curfman and Cantir had an on-again, off-again romantic relationship from 2012 to 2020. During those years, the couple lived together, became engaged to be married, and traveled to Moldova for a "pre-wedding" celebration that was not a legal marriage ceremony.

1

¶ 4    In 2017, Cantir purchased a condominium. Curfman's mother lent Cantir $5,000 for a portion of the down payment on the condominium, which Cantir later repaid by buying a car for Curfman. Cantir took title in her name only, never conveyed an interest in the condominium to Curfman, and paid utilities directly, all of which were in her name. Cantir and Curfman lived together in the condominium, with Curfman paying rent to Cantir.

¶ 5    In 2020, Curfman petitioned for dissolution of marriage, alleging that he and Cantir were common law spouses. Following an evidentiary hearing, the district court in that case found that no common law marriage existed between the parties. In addition to the above facts, the district court found, among other things, that

- Curfman "threw . . . out" the wedding band he had purchased;

- Cantir "did not tell others in the community that she was married to Curfman, referring to him as her boyfriend";

- the parties "lived as roommates most of the time and off and on as romantic partners";

- when Cantir deposited a check from Curfman in 2018, she "created a notarized affidavit" stating that she was

borrowing money "from [her] boyfriend," the money was "not a contribution to [her] condo[minium] or [her] personal assets," and she would repay the money in full to Curfman, which she did;

- the parties filed separate income tax returns as "single" taxpayers and "never had any joint banking accounts, nor did they fill out any other legal document asserting that they were married";

- Cantir repeatedly told Curfman that they were not married; and

- Curfman knew that he and Cantir were not married.

¶ 6 Based on those findings, the district court determined that Curfman did not meet his burden to establish a common law marriage. The court emphasized that, although the parties cohabitated for several years, they did not mutually consent to marriage and did not hold themselves out as husband and wife. It dismissed the case with prejudice.

¶ 7 Curfman did not appeal that judgment, instead filing a C.R.C.P. 60(b)(5) motion in April 2022 seeking to set aside the judgment. In the motion, he primarily alleged that Cantir

3

committed perjury at the hearing and, as a result, he was "conned out of [their] mutual . . . investment" in the condominium. The district court denied the motion as untimely, and a division of this court affirmed. *See Curfman I.*

¶ 8 Curfman then initiated a new lawsuit against Cantir, which forms the basis of this appeal. His amended complaint asserted one claim for fraudulent misrepresentation. Specifically, Curfman alleged that Cantir falsely represented to him that they were married and were mutually investing in the condominium as a married couple. He requested various forms of monetary damages in addition to attorney fees and costs.

¶ 9 Cantir moved for judgment on the pleadings, contending that Curfman's new suit was "a collateral attack" on the 2020 judgment and was therefore barred by claim preclusion. She also requested attorney fees and costs.

¶ 10 The district court granted Cantir's C.R.C.P. 12(c) motion, agreeing that Curfman's new claim against her was precluded by the previous judgment. Specifically, the court noted that there was no dispute about the finality of the first judgment or that both cases involved the same parties. And it found that "the subject matter

4

and claims [were] identical because both cases involve[d] Curfman's allegation that the parties held themselves out to be married." The court explained that the district court in the previous case "rejected Curfman's claim of a common law marriage and dismissed his dissolution petition" because it found that "Cantir repeatedly told Curfman that they were not married" and "he knew that the parties were not married." Ultimately, the district court below summarized, "the [previous case's] testimony established that Cantir did not mislead Curfman." The district court therefore dismissed Curfman's amended complaint with prejudice.

¶ 11    In the same order, which the district court issued on December 6, 2023, the district court granted Cantir's request for attorney fees and costs under section 13-17-101, C.R.S. 2024. The court set a twenty-one day deadline for Cantir to file "a separate motion establishing the amount and reasonableness of her attorney fees in compliance with C.R.C.P. 121, § 1-22(2)." Cantir filed her motion on December 20, 2023. But two days before she filed it, Curfman filed his notice of appeal. The court then granted the motion more than a month later, on January 22, 2024, following briefing from both sides. Curfman did not seek to amend his notice

of appeal to include the order reducing the fee award to a sum certain.

## II. Claim Preclusion

¶ 12 Curfman first contends that the district court erred by finding that his claim was precluded by his earlier suit seeking a dissolution of his purported marriage to Cantir. We disagree.

### A. Standard of Review and Applicable Law

¶ 13 We review claim preclusion de novo where, as here, "the pertinent facts are undisputed and the matter can be determined by a review of either the prior judgment or the record." *Jackson v. Am. Fam. Mut. Ins. Co.*, 258 P.3d 328, 330 (Colo. App. 2011).

¶ 14 "Claim preclusion works to preclude the relitigation of matters that have already been decided as well as matters that could have been raised in a prior proceeding but were not." *Argus Real Est., Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005). Claim preclusion protects "the defendant from being harassed by repetitive actions based on the same claim." *Loveland Essential Grp., LLC v. Grommon Farms, Inc.*, 2012 COA 22, ¶ 27 (citation omitted).

¶ 15    "For a claim in a second judicial proceeding to be precluded by a previous judgment, there must exist: (1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity or privity between parties to the actions." *Argus Real Est.*, 109 P.3d at 608.  As relevant to our review, whether identity of claims for relief exists is bounded by the injury for which relief is requested, not the specific claim or legal theory asserted.  *Loveland Essential Grp.*, ¶ 15; *Gavrilis v. Gavrilis*, 116 P.3d 1272, 1273-74 (Colo. App. 2005).  Claims are tied by the same injury where they rest on essentially the same factual basis and seek redress for the same basic wrong.  *Foster v. Plock*, 2017 CO 39, ¶ 29.

¶ 16    A court may take judicial notice of an adjudicative fact that is not subject to reasonable dispute because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  CRE 201(b)(2).  Court records are recognized as sources whose accuracy cannot be reasonably questioned; therefore, a court may take judicial notice of its own file, its factual findings, and legal conclusions.  *People in Interest of O.J.S.*, 844 P.2d 1230, 1233 (Colo. App. 1992), *aff'd sub nom. D.A.S.*

*v. People*, 863 P.2d 291 (Colo. 1993).  A court may also take judicial notice of the contents of court records in related proceedings. *People v. Sa'ra,* 117 P.3d 51, 56 (Colo. App. 2004); *see also Doyle v. People,* 2015 CO 10, ¶ 11 (observing that court records are regularly recognized "as adequate sources for judicially noticeable facts").

¶ 17     We review a district court's evidentiary rulings, including its decision to take judicial notice, for an abuse of discretion.  *People v. Sena,* 2016 COA 161, ¶ 22.  A district court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair. *Anderson v. Pursell,* 244 P.3d 1188, 1194 (Colo. 2010).

## B.     Analysis

¶ 18     As we understand it, Curfman's contention is that his claim for fraudulent misrepresentation is not precluded because (1) a claim for fraudulent misrepresentation is different from a claim that a common law marriage exists; and (2) pertinent facts from the previous suit remain in dispute, which prohibited the district court

from taking judicial notice of the previous judgment.  We reject both arguments.[1]

¶ 19    First, Curfman is correct that fraudulent misrepresentation and dissolution of a common law marriage are different claims. That, however, is not the extent of the inquiry into claim preclusion. Whether claims for relief are identical for purposes of claim preclusion depends upon the *injury* for which relief is requested, not the specific claim or legal theory asserted.  *Loveland Essential Grp.*, ¶ 15; *Gavrilis*, 116 P.3d at 1273-74.  And claims are bounded by the same injury where they rest on essentially the same factual basis and seek redress for the same basic wrong.  *Foster*, ¶ 29.

¶ 20    In his first suit, Curfman alleged that he and Cantir were common law spouses.  He attempted to show that they mutually

---

[1] Although we have thoroughly reviewed the record and Curfman's briefing on appeal, the precise factual and legal bases of Curfman's claims remain elusive.  Nonetheless, to the extent that Curfman's claim of fraudulent misrepresentation was based on a theory that Cantir perjured herself or committed other fraudulent acts in connection with the dissolution proceedings, such a claim could not form the basis for an independent action.  *See In re Marriage of Gance*, 36 P.3d 114, 117 (Colo. App. 2001) ("[T]he rule in Colorado is that a party bringing an independent equitable action based upon fraud must assert more than intrinsic fraud such as perjury or nondisclosure by a party to the litigation.").

consented to marriage and held themselves out as husband and wife. Curfman sought a division of property that would include the condominium in which they cohabitated. The district court rejected Curfman's claims and, in doing so, specifically credited Cantir's testimony that "she repeatedly told Curfman that they were not married and he knew they were not married."

¶ 21 In the lawsuit giving rise to this appeal, Curfman alleged that Cantir led him to believe that they were common law spouses. He attempted to show that Cantir falsely held him out as her husband. Curfman sought monetary damages that would, among other things, "adequately reimburse [him] for [his] investment in the condo."

¶ 22 Curfman's claims in both lawsuits rest on essentially the same factual basis (the allegation that one or both parties held themselves out as spouses) and seek redress for the same basic wrong (the allegedly unfair distribution among them of the condominium's value). But to prevail on his fraudulent misrepresentation claim, Curfman would be required to establish that Cantir misled him as to their marital status. That argument is foreclosed by the district court's finding in the first case that

Curfman "knew" that he and Cantir were not married. Thus, Curfman's claims are bounded by the same injury and are identical claims for relief for purposes of claim preclusion.

¶ 23    Second, Curfman is incorrect to assert that the district court was not permitted to take judicial notice of the previous judgment. According to Curfman, pertinent facts from that suit remain in dispute, thereby preventing the judgment from qualifying as a source "whose accuracy cannot reasonably be questioned" under CRE 201(b)(2).

¶ 24    Curfman's argument misunderstands the requirements for judicial notice. Because court records are recognized as sources whose accuracy cannot be reasonably questioned, a court may take judicial notice of its own file, its factual findings, and legal conclusions. *O.J.S.*, 844 P.2d at 1233. For purposes of the claim preclusion inquiry at issue here, the existence of the previous judgment and the substance of that judgment are undisputed pertinent facts of which the district court took judicial notice. That Curfman disagrees with that judgment and the findings underpinning it is immaterial to the question whether that judgment occurred such that it precludes Curfman's fraudulent

11

misrepresentation claim. Curfman's arguments on this point are nothing more than an attempt to relitigate matters already decided in his first lawsuit, which claim preclusion exists to prevent.

¶ 25 We find no abuse of discretion in the district court's decision to take judicial notice of the first judgment, and we agree with the district court that Curfman was precluded from bringing his fraudulent misrepresentation claim.

### III. Attorney Fees

¶ 26 Curfman next contends that the district court erroneously awarded fees against him under sections 13-17-101 and 13-17-102, C.R.S. 2024. Because the district court's fee award is not properly before us, we dismiss this portion of the appeal.

¶ 27 As noted above, in its order granting Cantir's motion for judgment on the pleadings, the district court awarded Cantir attorney fees and costs. But before Cantir filed her motion seeking fees and before the court issued an order reducing the fee award to a sum certain, Curfman filed his notice of appeal. On January 22, 2024, the district court issued an order awarding Cantir $9,850 in attorney fees. (Because the appellate record was prepared and transmitted approximately three months after Curfman filed his

12

notice of appeal, this order is included in the court file despite the fact that Curfman filed his notice of appeal before it was issued.)

¶ 28     "[A]n award of attorney fees is distinct and separately appealable from the judgment on the merits." *Kennedy v. Gillam Dev. Corp.*, 80 P.3d 927, 929 (Colo. App. 2003).  Moreover, "where the trial court has granted attorney fees in its judgment on the merits, but has deferred ruling on the amount of the award, a separate timely notice of appeal [must] be filed on all issues related to attorney fees after the award is reduced to a sum certain." *Jensen v. Runta,* 80 P.3d 906, 908 (Colo. App. 2003).  Failure to separately appeal the award of attorney fees and costs deprives this court of jurisdiction to consider the issue.  *See Dawes Agency, Inc. v. Am. Prop. Mortg., Inc.*, 804 P.2d 255, 257 (Colo. App. 1990).

¶ 29     Curfman did not attach any written, final order to his notice of appeal.  When ordered to submit "a copy of the district court's order on appeal," he filed a copy of the district court's order granting Cantir's motion for judgment on the pleadings.  He never filed the district court's order reducing the fee award to a sum certain, nor did he seek to amend his notice of appeal to include that order.  *Cf. Cody Park Prop. Owners' Ass'n v. Harder*, 251 P.3d 1, 7 (Colo. App.

13

2009) (reaching the merits of an appeal of an award of attorney fees where "this court accepted [appellant's] supplemental notice of appeal for attorney fees, concluding it was timely filed following the [district] court's award of attorney fees"). Accordingly, we lack jurisdiction to reach the merits of Curfman's challenge to the January 22, 2024, order.

## IV. Bias

¶ 30 Finally, Curfman alleges on appeal that the district court judge was biased against him. We again disagree.

### A. Applicable Law and Standard of Review

¶ 31 "Basic to our system of justice is the principle that a judge must be free of all taint of bias and partiality." *People v. Jennings*, 2021 COA 112, ¶ 18. A judge may be disqualified from presiding over a matter based on (1) an appearance of impropriety or (2) actual bias. *People in Interest of A.P.*, 2022 CO 24, ¶ 26.

¶ 32 The Colorado Code of Judicial Conduct requires a judge to recuse from a case based on the appearance of impropriety when "the judge's impartiality might reasonably be questioned." C.J.C. 2.11(A); *see also People in Interest of A.G.*, 262 P.3d 646, 650 (Colo. 2011) (Even if a judge may be able to act impartially, "the judge is

14

disqualified nonetheless because a reasonable observer might have doubts about the judge's impartiality."). "The purpose behind disqualifying a judge who has the appearance of partiality is to protect public confidence in the judiciary." *Jennings*, ¶ 19.

¶ 33 "Actual bias, on the other hand, exists when, in all probability, a judge will be unable to deal fairly with a party . . . ." *A.P.*, ¶ 28. A claim of actual bias focuses on the "subjective motivations of the judge," *Jennings*, ¶ 20, and requires disqualification when a judge "has a personal bias or prejudice concerning a party or a party's lawyer," C.J.C. 2.11(A)(1). Unlike provisions prohibiting a judge from presiding over a case involving an appearance of impropriety, the purpose behind disqualifying a judge for actual bias is to ensure that the parties to a case receive a fair and impartial trial. *A.P.*, ¶ 28; *A.G.*, 262 P.3d at 651. "Only when a judge was actually biased will we question the reliability of the proceeding's result." *A.P.*, ¶ 29.

¶ 34 To establish a claim for actual bias, a party must show that a judge had a "substantial bent of mind against him or her," *People v. Drake*, 748 P.2d 1237, 1249 (Colo. 1988), or a "deep-seated favoritism . . . that would make fair judgment impossible," *A.P.*,

15

¶ 31 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). The record must clearly demonstrate the judge's actual bias. *Jennings*, ¶ 28. "Bare assertions and speculative statements are insufficient to satisfy the burden of proof." *A.P.*, ¶ 30. Indeed, disqualification for an actual bias is exceedingly rare. *See, e.g.*, *Jennings*, ¶ 30 (no actual bias when the judge told the defendant's attorney that "when I saw you enter in this case I knew there were going to be issues because there are almost always issues with you"); *People v. Dobler*, 2015 COA 25, ¶ 12 ("While the judge's statements that he would be 'haunt[ed]' by his decision to grant probation showed the judge was affected by his prior decision to be lenient with defendant, it is not enough to establish that the judge was unable to sentence defendant fairly."). Ordinarily, "adverse legal rulings by a judge are unlikely to provide grounds for a bias claim, as they are proper grounds for appeal, not for recusal." *A.P.*, ¶ 32.

Under C.R.C.P. 97, a party may move to disqualify a judge who is "interested or prejudiced" for or against a party. *See Bocian v. Owners Ins. Co.*, 2020 COA 98, ¶ 13.

¶ 36    Although Curfman at some points seems to imply that there was an appearance of impropriety associated with the district court judge's assignment to the case, we understand the main thrust of his argument to be focused on a claim of actual bias. We review such a claim de novo. *Dobler*, ¶ 8; *see also Jennings*, ¶ 27.

### B.    Analysis

¶ 37    Curfman moved below for the disqualification of the district court judge under C.R.C.P. 97. In essence, Curfman sought disqualification on the basis that the judge found in the first case between the parties that Cantir's testimony was credible and Curfman's was not, and that the judge ruled against Curfman in that case. The district court denied Curfman's motion, explaining that Curfman failed to file an affidavit as C.R.C.P. 97 requires and that "his motion [was] replete with conclusory allegations and his opinion that the judge cannot be fair and impartial based on previous judicial rulings."

¶ 38    We agree with the district court that Curfman failed to allege or establish sufficient grounds for disqualification in his motion below, and we conclude that his arguments on appeal are similarly lacking.

¶ 39    Much like he did below in his motion for disqualification, Curfman argues on appeal that the district court judge exhibited bias against him through adverse rulings.  For example, he cites as evidence of bias the district court's (1) factual findings in the first case and its conclusion that there was no common law marriage; (2) application of claim preclusion in the case underlying this appeal; and (3) conclusion in this case that Curfman's claim was frivolous.  However, these adverse legal rulings are insufficient grounds for a bias claim.  *See A.P.*, ¶ 32.

¶ 40    Moreover, our review of the appellate record does not reveal any actual bias by the district court judge.  We see no indication that the district court judge did anything other than act impartially in determining the case before it; that some of the judge's rulings were adverse to Curfman does not establish bias against him.

## V.    Appellate Attorney Fees

¶ 41    Cantir requests an award of costs and of appellate attorney fees pursuant to C.A.R. 39.1.  She argues that she is entitled to attorney fees because Curfman's appeal is frivolous.

¶ 42    An appellate court may assess attorney fees against a party who maintained an appeal that was substantially frivolous.  § 13-

17-102.  An appeal may be frivolous as filed or frivolous as argued. *See Calvert v. Mayberry*, 2019 CO 23, ¶ 45.  An appeal is frivolous as argued if it fails to set forth a coherent assertion of error supported by legal authority.  *Castillo v. Koppes-Conway,* 148 P.3d 289, 292 (Colo. App. 2006).

¶ 43   We conclude that all three of the issues Curfman raises are frivolous as argued.  First, Curfman's appeal of the district court's order granting Cantir's motion for judgment on the pleadings amounts to little more than an attempt to relitigate the facts found by the district court in both this case and in the dissolution proceedings.  Second, Curfman's challenge of the attorney fee award is not properly before us because he did not include it in his notice of appeal.  And third, Curfman's allegations of judicial bias are conclusory and based on nothing more than the district court's adverse rulings.  While we are mindful of Curfman's status as a pro se litigant, we cannot countenance appellate arguments that are neither coherent nor supported by legal authority.  Consequently, we conclude that an award of reasonable attorney fees incurred on appeal is warranted.

¶ 44　　Because the district court is better situated to address the necessary factual determinations related to Cantir's request, we exercise our discretion under C.A.R. 39.1 and direct the district court on remand to award Cantir a reasonable amount of attorney fees incurred on appeal.  Finally, under C.A.R. 39(a), Cantir is entitled, as the prevailing party, to her costs on appeal and may, under C.A.R. 39(c), apply in the district court for those costs.

## VI.　Disposition

¶ 45　　We affirm the district court's judgment and dismiss the appeal in part.

JUDGE FREYRE and JUDGE LUM concur.